IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00209-MR

| | | |
|---|---|---|
| CHRISTOPHER HAYDEN, d/b/a Cgraydesign, | ) ) ) | |
| Plaintiff, | ) ) | MEMORANDUM OF |
| vs. | ) ) | DECISION AND ORDER |
| EAGLES NEST OUTFITTERS, INC., PETER PINHOLSTER, in his individual capacity, and PAUL PINHOLSTER, in his individual capacity, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendants' Motions to Dismiss the Amended Complaint [Docs. 24, 26, 31].

## I.     PROCEDURAL BACKGROUND

This case arises from the alleged unauthorized use of the Plaintiff's graphic designs.   The Plaintiff Christopher Hayden, d/b/a Cgraydesign, initiated this action on August 1, 2018, against the Defendants Eagles Nest Outfitters, Inc. ("ENO"), Peter Pinholster, and Paul Pinholster (collectively, "Defendants"), asserting claims for copyright infringement, as well as claims under North Carolina law for breach of contract, misappropriation of trade

secrets, unfair competition, unjust enrichment, unfair and deceptive trade practices, and fraud. [Doc. 1]. Defendants ENO and Peter Pinholster moved to dismiss the Complaint.[1] [Docs. 15, 17]. Within 21 days of the filing of these motions to dismiss, the Plaintiff filed an Amended Complaint, thereby mooting the Defendants' motions. [See Doc. 21 and Text-Only Order entered Nov. 6, 2017]. In the Amended Complaint, the Plaintiff abandoned his claims for unfair competition and fraud and asserted a new claim for fraud in the inducement. [Doc. 21]. All three Defendants then filed motions to dismiss the Amended Complaint. [Docs. 24, 26, 31]. The Plaintiff has responded to each motion [Docs. 29, 33, 36], and each Defendant has replied [Docs. 34, 35, 37]. Accordingly, these matters are ripe for disposition.

## II.  STANDARD OF REVIEW

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendant's motion, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is

---

[1] At that time, Defendant Paul Pinholster had not yet made an appearance in the action.

not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement...." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d

at 256; <u>Giacomelli</u>, 588 F.3d at 193.   Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. <u>Twombly</u>, 550 U.S. at 570; <u>Consumeraffairs.com</u>, 591 F.3d at 256.

## III.   FACTUAL BACKGROUND

Taking the well-pled allegations of the Amended Complaint as true, the following is a summary of the relevant facts.

The Plaintiff is a graphic designer who resides in Buncombe County, North Carolina.  [Doc. 21 at ¶¶ 2, 11].  Defendants Paul Pinholster and Peter Pinholster are also citizens and residents of Buncombe County, North Carolina.  [Doc. 21 at ¶ 3, 4].  Defendant ENO is a corporation formed and existing under North Carolina law with its principal place of business in Asheville, North Carolina.  [<u>Id.</u> at ¶ 5].  ENO sells hammocks and other outdoor equipment in retail stores throughout the United States and through their website.  [<u>Id.</u> at ¶ 6].

In or around October 2003, the Plaintiff entered into an oral contract for his design services with Peter Pinholster and Paul Pinholster, who were at the time doing business as Eagles Nest Outfitters.  [<u>Id.</u> at ¶ 12].  This oral contract was assigned to the Defendant ENO on or about April 13, 2005 and remained unchanged.  [<u>Id.</u> at ¶ 13].  Pursuant to this oral agreement, the Plaintiff provided design services for an hourly or flat fee.  The Plaintiff

provided only the final version of his designs in a protected file for use for a specific purpose, and any revisions or repurposing of the final version of the designs required the Plaintiff's permission. [Id. at ¶ 14].

In or around March 2004, the Plaintiff created the ENO logo for use by Peter Pinholster and Paul Pinholster as the brand identity for ENO. [Id. at ¶ 15; Doc. 21-1]. The Plaintiff then began to rebrand ENO by designing new hangtags, graphics, banners, logos, shirts, stickers, and hats for use by Peter Pinholster and Paul Pinholster on ENO's product packaging and merchandise. [Doc. 21 at ¶ 16]. As part of this rebranding, the Plaintiff created the "Hammock Guy" icon. [Id. at ¶ 17; Doc. 21-2]. The Plaintiff incorporated the Hammock Guy icon into Defendants' stationaries, business cards, hangtags, stickers, postcards, shirts, and trade show banners. [Doc. 21 at ¶ 18]. The rebranding was a huge success and ENO started to grow exponentially. [Id. at ¶ 19]. As ENO continued to grow, the Defendants exclusively used the Plaintiff's services for their graphic design needs. [Id. at ¶ 20].

In October 2007, ENO hired an in-house graphic designer. [Id. at 21]. Prior to this time, ENO had abided by the oral agreement with the Plaintiff. [Id. at 22]. Upon information and belief, the in-house graphic designer

revised and repurposed the Plaintiff's final designs without the Plaintiff's permission.  [Id. at ¶¶ 23, 24].

In November 2007, Peter Pinholster demanded that the Plaintiff turn over all of his unprotected source files containing his technical specifications, mathematical formulas, font manipulations, layers, color tones and other techniques that were his trade secrets and proprietary information.  [Id. at ¶ 25].  The Plaintiff refused Peter Pinholster's demands for his source files.  [Id. at ¶ 26].

On November 28, 2007, the Plaintiff sent an email to Peter Pinholster, explaining that he refused to turn over the source files because they contained proprietary information and trade secrets that were the Plaintiff's protected property and the release of this information to others could cause economic hardship for the Plaintiff.  [Id. at ¶¶ 28, 29].  The Plaintiff also sent a memo to Peter Pinholster on or about November 30, 2007, restating the terms of the parties' oral agreement regarding the Plaintiff's ownership of his designs and his requisite approval to revise or repurpose his designs.  [Id. at ¶ 31; Doc. 21-3].  After the Plaintiff sent the email and memo, Peter Pinholster did not demand the source files again.  [Doc. 21 at ¶ 32].  However, as a result of the Plaintiff's refusal to turn over his source files, Peter Pinholster directed ENO to stop using the Plaintiff's services.  [Id. at ¶

33].  The Plaintiff did not receive any work from Defendant ENO in 2008.  He performed a trivial amount of work for ENO in 2009, and no work in 2010 and 2011.  [Id. at ¶ 34].  During this time period, ENO's in-house graphic designers continued to modify the Plaintiff's final designs without ENO seeking the Plaintiff's permission.  [Id. at ¶ 35].

Beginning in late 2011, Paul Pinholster reached out to the Plaintiff multiple times to request the Plaintiff's services.  [Id. at ¶ 36].  In February 2012, the Plaintiff met with Peter Pinholster to discuss renewing their working relationship.  [Id. at ¶ 38].  During this meeting, Peter Pinholster assured the Plaintiff that the Defendants would not revise or repurpose his final designs again without his written permission, including the Plaintiff's final designs of the ENO logo and Hammock Guy icon.  [Id. at ¶ 39].  Based on these assurances, the Plaintiff resumed his working relationship with Defendants.  [Id. at ¶ 40].

On August 26, 2013, the Plaintiff and ENO entered into a written contract.  [Id. at ¶ 41; Doc. 21-4].  Pursuant to this written agreement, the Plaintiff agreed to work on a per project basis, charging an hourly fee for his services.  [Doc. 21-4 at 1].  The agreement provides that the Plaintiff "retained ownership of all copyrights in the designs, graphics, logos, and other assets" created by the Plaintiff for ENO, and that any revisions,

updates, or re-purposes of the final designs required the Plaintiff's permission.  [Id. at 2].

After the written agreement was signed, the Plaintiff started to update ENO's brand identity.  [Id. at ¶ 44].  As part of the update, the Plaintiff designed an enterprise level website for ENO that launched on or about October 19, 2014.  [Id. at ¶ 45].  The website contained the Plaintiff's updated ENO colors, type fonts, and photography treatment that would be used as the new branding precedent for all of ENO's product packaging and merchandise.  [Id. at ¶ 46].

From February 2015 to November 2015, the Plaintiff designed new product packaging, hangtags, banners, editorials, logos, and merchandise for ENO.  [Id. at ¶ 47].  In accordance with the parties' written agreement, the Plaintiff delivered his designs to ENO in a protected file in the final form for the use intended.  [Id. at 48].

Notwithstanding the written agreement, the Defendants hacked the Plaintiff's protected files using computer software with the intent to revise or repurpose the Plaintiff's final designs.  [Id. at ¶ 49].  The computer software allowed ENO to repeatedly revise, updated, and repurpose the Plaintiff's designs without his permission.  [Id. at ¶ 51].  Upon "information and belief," the Plaintiff alleges that Peter Pinholster and Paul Pinholster authorized

ENO's in-house graphic designers to revise or repurpose the Plaintiff's designs upon ENO receiving the final file from the Plaintiff.  [Id. at ¶ 52].

For example, in April 2015, the Plaintiff designed at ENO's request the hangtag art file ("DH-001 Hangtag"), for use by ENO on the hangtag attached to the DoubleNest Hammock.  [Id. at ¶ 53; Doc. 21-5].  In the DH-001 Hangtag, the hammock on the hangtag is colored Navy and Olive.  [Id. at ¶ 54; Doc. 21-5].  ENO offers 35 other color variations on the DoubleNest Hammock, each with its own hangtag that contains a unique bar code, color swatch, color description, and photograph of the hammock being sold.  [Doc. 21 at ¶ 55].  For each of the other 35 color variations of the DoubleNest Hammock, ENO revised the Plaintiff's DH-001 Hangtag to replace the barcode, color swatch, text, and photograph of the hammock without his permission.  [Id. at ¶ 56].  ENO did this with most of the final products the Plaintiff delivered to the Defendants.  [Id. at ¶ 58; Doc. 21-6].

In July 2015, an ENO employee requested the Plaintiff's source files used to create ENO's website to repurpose them for use on ENO's Australian website.  [Id. at ¶ 59].  The Plaintiff informed the employee that he (the Plaintiff) owned the source files and that ENO would have to pay him to repurpose the source files.  [Id. at ¶ 60].  ENO did not pay the Plaintiff for his source files.  [Id. at ¶ 61].

In November 2015, the Plaintiff requested a meeting with the Defendants to discuss his rights in his designs due to the latest request of his source files from ENO. [Id. at ¶ 62]. Paul Pinholster and Peter Pinholster, however, refused to meet with the Plaintiff. [Id. at ¶ 63]. Instead, Lane Nakaji, the manager of ENO, met with the Plaintiff to discuss the Plaintiff's ownership rights in his designs. [Id. at ¶ 64]. The following day, Paul Pinholster threatened the Plaintiff to "tread lightly or tread roughly" in asserting ownership rights in his works. [Id. at ¶ 65]. Thereafter, the Plaintiff's work requests from ENO began to slow. [Id. at ¶ 66]. ENO, however, continued to make copies of the Plaintiff's final designs without his permission. [Id. at ¶ 67].

In March 2016, the Defendants licensed the Hammock Guy icon and the ENO logo to Catawba Brewing Company for use on the design of the beer can for ENO Pilsner. [Id. at ¶ 72; Doc. 21-8]. The Plaintiff did not give his permission to use the ENO logo or the Hammock Guy icon on the ENO Pilsner to the Defendants or Catawba Brewing Company. [Id. at ¶ 73].

## IV. DISCUSSION

The Defendants seek dismissal of all the claims asserted by the Plaintiff. Because the Court's subject matter jurisdiction over this action depends on the existence of a federal question [see Doc. 21 at ¶ 7], the Court

will first address the claim for copyright infringement before turning to the Plaintiff's state law claims.

## A.    Copyright Infringement

The Plaintiff asserts claims of copyright infringement against all the Defendants for their unauthorized use of the Plaintiff's copyrighted material, specifically, the Hammock Guy icon; the portion of the ENO logo he designed; and the portion of the DH-001 Hangtag he designed.  [Doc. 21 at ¶¶ 98-109].

"To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright."  Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 537 (4th Cir. 2015) (quoting Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001)).  To establish ownership of a copyright, a plaintiff must allege originality and copyrightability.  Darden v. Peters, 488 F.3d 277, 285-86 (4th Cir. 2007). "Establishing originality implicates only a light burden."  Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 430 (4th Cir. 2010), as amended (Aug. 24, 2010).  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some

minimal degree of creativity." <u>Feist Pubs., Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 345 (1991). The threshold level of creativity required for copyrightability is low such that the "vast majority of works make the grade quite easily, as they possess some creative spark." <u>Darden</u>, 488 F.3d at 286.

The Defendants contend that, because the Copyright Office rejected the Plaintiff's application for a copyright for the ENO Logo and the DH-0001 Hangtag, this Court should defer to the Copyright Office and find that the Plaintiff has no valid copyrights in these designs.[2] The Plaintiff, however, has asserted plausible allegations that the ENO Logo and DH-0001 Hangtag were original and copyrightable works and thus entitled to copyright protection. Moreover, the Fourth Circuit has never held that the Copyright Office's initial rejection of a copyright application is entitled to deference. Indeed, the Circuit has noted a split of authority on this issue. <u>See</u> <u>Darden</u>, 488 F.3d at 286 (comparing <u>John Muller & Co. v. New York Arrows Soccer Team</u>, 802 F.2d 989, 990 (8th Cir.1986) (applying abuse of discretion

---

[2] A party who has been denied registration of a copyright by the Copyright Office has two methods of redress. The applicant may file a review action under the Administrative Procedures Act, 17 U.S.C. §§ 410(a), 701(e), or the applicant may seek judicial review of the rejected registration a part of an infringement action against an accused infringer pursuant to § 411(a) of the Copyright Act. <u>Darden</u>, 488 F.3d at 285. The Plaintiff has elected to pursue this second method of redress, as specifically allowed by the Copyright Act.

standard to infringement claim) with <u>Carol Barnhart, Inc. v. Economy Cover</u> <u>Corp.</u>, 773 F.2d 411, 414 (2d Cir.1985) (according no deference to Register's copyrightability conclusion)).  Thus, the Copyright Office's rejection of the Plaintiff's copyright application is not determinative of the Plaintiff's infringement claims at this stage in the proceedings.

With respect to the Hammock Guy Icon, the Defendants argue that their use of this copyrighted work did not exceed the express license granted by the Plaintiff and therefore the Plaintiff cannot state a claim for infringement of this material.

To succeed on a copyright infringement claim, the plaintiff must prove that the copying was not authorized.  Where the copyright is subject to a license, the copyright holder must establish that the defendant's copying exceeds the scope of its license.  See <u>Tattoo Art Inc. v. TAT Int'l LLC</u>, 498 F. App'x 341, 346 (4th Cir. 2012).  Here, the Plaintiff has asserted plausible allegations that the Defendants exceeded the scope of the license by applying the Hammock Guy Logo to products, advertising and other objects that were either not produced by the Plaintiff or not authorized by the Plaintiff. [Doc. 21 at ¶¶ 54, 104, 105].  Accordingly, the Plaintiff has asserted a valid copyright infringement claim regarding the Hammock Guy Icon.

For all these reasons, the Defendants' motions to dismiss the Plaintiff's claim for copyright infringement are denied.

**B.    Breach of Contract**

The Plaintiff alleges that ENO breached the parties' contract by revising, updating, and repurposing the Plaintiff's final designs without permission.  [Doc. 21 at ¶¶ 76-83].

In order to establish a claim for breach of contract, a plaintiff must show "(1) existence of a valid contract and (2) breach of the terms of that contract." D.G. II, LLC v. Nix, 211 N.C. App. 332, 337, 712 S.E.2d 335, 339 (2011) (citation omitted).  Here, the Plaintiff has alleged that he entered into multiple contracts, both oral and written, with ENO.  [Doc. 21 at ¶¶ 12, 40, 42].  The Plaintiff alleges that each of these contracts included a provision restricting ENO from repurposing, revising or updating the Plaintiff's work without his permission.  [Id.].  The Plaintiff further has alleged that ENO violated these express agreements by repurposing, revising and updating the Plaintiff's work product, including his copyrighted work, without his consent. [Id.].  Accordingly, the Plaintiff has presented sufficient factual assertions to plausibly allege a breach of contract claim against ENO.

ENO contends that the parties' written contract explicitly contemplates its application only to projects entered into *after* it was signed and does not

refer to or incorporate any previous oral agreements. As such, ENO contends, the parol evidence rule precludes the Plaintiff's claim for breach of contract based on the use of any designs provided to ENO prior to the entry of the written agreement.

To the extent that ENO relies on the parol evidence rule to justify dismissal of the Plaintiff's breach of contract claim, such argument must be rejected. The parol evidence rule "is intended to apply only to final, totally integrated writings; that is, those writings relating to a transaction which are intended to supersede all other agreements regarding that transaction." Rowe v. Rowe, 305 N.C. 177, 185, 287 S.E.2d 840, 845 (1982) (citations omitted). Here, there is no integration clause in the parties' written agreement, and there is no language in the contract to suggest that it was intended to supersede or replace any prior agreements. Thus, the parol evidence rule does not preclude the Plaintiff's claim for breach of contract based on the use of any designs prior to the entry of the written agreement.

ENO further contends that it did not breach the written contract by revising the design work provided *after* the contract was entered into because no copyright protection exists for this work. Because the Court has determined that the Plaintiff has stated a claim for the infringement of valid copyrights, this argument must fail. In any event, however, the Plaintiff has

alleged that the parties' contract restricted ENO's use of *all* of the Plaintiff's work product, including both copyrighted and non-copyrighted materials.

For all these reasons, ENO's motion to dismiss the Plaintiff's breach of contract claim is therefore denied.

### C.    Misappropriation of Trade Secrets

In his Second Claim for Relief, the Plaintiff alleges that ENO's actions in revising and repurposing his designs constituted a misappropriation of trade secrets, in violation of N.C. Gen. Stat. §§ 66-152, *et seq.* [Doc. 21 at ¶¶ 84-94].

To establish a claim for misappropriation of a trade secret, a plaintiff must "identify with sufficient specificity" both "the trade secrets [the defendant] allegedly misappropriated" and "the acts by which the alleged misappropriations were accomplished." Washburn v. Yadkin Valley Bank and Trust Co., 190 N.C. App. 315, 327, 660 S.E.2d 577, 586 (2008). A trade secret is defined by the North Carolina Trade Secret Protection Act as follows:

> [B]usiness or technical information including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent, actual or potential commercial value from not being generally known or readily ascertainable through independent

development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3).

ENO argues that the Plaintiff's misappropriation claim must be dismissed because the Amended Complaint fails to identify with particularity the Plaintiff's purported trade secrets or the means of misappropriation. ENO further contends that the Amended Complaint establishes that ENO did not misappropriate any trade secrets within the meaning of the North Carolina Trade Secrets Protection Act.

In the Amended Complaint, the Plaintiff identifies his trade secrets as his technical specifications, mathematical formulas, font manipulations, layers, color tones, techniques and methods. [Doc. 21 at ¶¶ 25, 85]. The Plaintiff further alleges that he undertook efforts to protect his work by providing his work product in a protected file format and restricting its use through oral and written contracts. [Id. at ¶¶ 14(d), 39, 41]. Further, the Plaintiff alleges that these matters are trade secrets, as they are not "generally known or readily ascertainable," as evidenced by the Defendants' repeated request for the Plaintiff's source files and for information about his font manipulations. [See id. at ¶¶ 25, 59, 70]. Accordingly, the Court

concludes that the Plaintiff has adequately alleged the existence of trade secrets.

Further, the Amended Complaint adequately asserts the manner in which these trade secrets were allegedly misappropriated. Specifically, the Amended Complaint alleges that the Defendants hacked the Plaintiff's "protected files using computer software with the intent to revise or repurpose [the Plaintiff's] final designs." [Doc. 21 at ¶¶ 49,50]. The Plaintiff's Amended Complaint contains the requisite specificity, and therefore, ENO's motion to dismiss the Plaintiff's misappropriation of trade secrets claim is denied.

### D.    Unjust Enrichment

As an alternative to his breach of contract claim, the Plaintiff asserts a claim for unjust enrichment, on the grounds that ENO unfairly benefited and prevented the Plaintiff from earning additional revenue for revising, updating, and repurposing of his work product. [Doc. 21 at ¶¶ 95-97]. ENO moves to dismiss this claim, arguing that it is preempted by federal copyright law. ENO further argues that the claim is insufficiently pled, in that the Plaintiff has failed to allege that ENO was "unjustly" enriched by its revision of the Plaintiff's design work.

With respect to ENO's first argument, the Plaintiff concedes that, to the extent that the Plaintiff's work is entitled to copyright protection, his unjust

enrichment claim should not go forward.  The Plaintiff correctly points out, however, that the unjust enrichment claim cannot be entirely preempted by federal law, as not all of the Plaintiff's work is alleged to have been subject to copyright protection.  Given the dispute over the existence of copyright protection for the Plaintiff's work product, dismissing the unjust enrichment claim at this stage on the basis of preemption would be premature.

As for ENO's argument that the Plaintiff's unjust enrichment claim is not sufficiently pled, the Court also declines to dismiss such claim at this stage of the proceedings.  "[I]n order to prevail on a claim of unjust enrichment, a plaintiff must show that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received."  Butler v. Butler, 239 N.C. App. 1, 7, 768 S.E.2d 332, 336–37 (2015) (quoting in part Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000)) (internal quotation marks omitted).  Here, the Plaintiff has adequately alleged that ENO revised and repurposed the Plaintiff's design work without his consent and that such actions exceeded the scope of ENO's license to use the Plaintiff's copyrighted work.   To the extent that such claims are not cognizable under a breach of contract theory,

the Plaintiff has adequately alleged an alternative equitable theory under unjust enrichment. ENO's motion to dismiss this claim, therefore, is denied.

### E. Fraudulent Inducement

In the Fifth Claim for Relief, the Plaintiff asserts that the Defendants fraudulently induced the Plaintiff to enter into the written contract by promising not to revise, update or repurpose the Plaintiff's work without his permission. [Doc. 21 at ¶¶ 110-26]. Specifically, the Plaintiff alleges that the Defendants had no intent to adhere to their promises not to revise, update or repurpose the Plaintiff's work, and that the Plaintiff reasonably relied on the Defendants' assurances and concealment in agreeing to enter the written contract. [Id.].

"[T]he mere failure to carry out a promise in contract does not support a tort action for fraud." Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003). "A failure to perform a promise can be a basis for fraud only where there is evidence the promissor had a 'specific intent' not to perform at the time a promise was made." Id. (citation omitted)

Here, the Plaintiff has failed to plausibly allege that the Defendants had a specific intent not to perform at the time that they entered into the written agreement with the Plaintiff. In support of his claim, the Plaintiff offers only the conclusory assertion that the Defendants' affirmative misrepresentations

and omission of material facts were made "with the intent to deceive [the Plaintiff]." [Doc. 21 at ¶ 119]. As "further evidence" of the Defendants' intent, the Plaintiff cites the Defendants' "past actions in surreptitiously revising, updating and repurposing [the Plaintiff's] work and Defendants' historical interaction with [the Plaintiff] as alleged above." [Id. at ¶ 120]. Such vague allegations, however, fail to identify any specific, plausible facts to support a finding that the Defendants had no intent of performing the written contract at the time it was entered.

The Plaintiff's allegations, at most, allege a breach of contract: that ENO breached the terms of the parties' agreement by revising the Plaintiff's designs without his permission. The Plaintiff has not alleged sufficient facts to support a claim that the Defendants fraudulently entered into the written contract without intending to perform. Accordingly, the Plaintiff's claim for fraudulent inducement is dismissed.

### F.    Unfair and Deceptive Trade Practice Claim

In his sixth and final claim for relief, the Plaintiff alleges that the Defendants' conduct further constitutes unfair and deceptive trade practices in violation of N.C. Gen. Stat. §§ 75-1, et seq. ("Chapter 75"). [Doc. 21 at 127-38]. The Defendants move to dismiss this claim on the grounds that it merely restates the Plaintiff's breach of contract claim.

The Defendants are correct that the mere breach of contract, even where the breach is intentional, cannot constitute an action under Chapter 75. Broussard v. Meineke Discount Muffler Shops, 155 F.3d 331, 347 (4th Cir. 1998). Rather, the breach must be accompanied "by some type of egregious or aggravating circumstances before the statute applies." Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998). The Plaintiff has failed to allege such aggravating circumstances here, and thus his Chapter 75 claim cannot be supported by his claim of breach of contract.

The Plaintiff also relies upon the allegations made in support of his claim for fraudulent inducement to support his claim under Chapter 75. [Doc. 33 at 22]. Because the Court has concluded that the Plaintiff has failed to state a claim for fraudulent inducement claim, the Plaintiff's allegations in this regard are insufficient to support a claim under Chapter 75 against the Defendants as well. As the fraudulent inducement allegations were the only support for the Plaintiff's Chapter 75 claim against Defendants Peter and Paul Pinholster, the Plaintiff's claim as to these Defendants will be dismissed.

The Court has determined, however, that the Plaintiff has adequately stated a claim for misappropriation of trade secrets against ENO. The North Carolina Court of Appeals has recognized that the misappropriation of trade

secrets also constitutes a violation of Chapter 75.  <u>See</u> <u>Drouillard v. Keister</u> <u>Williams Newspaper Servs., Inc.</u>, 108 N.C. App. 169, 173, 423 S.E.2d 324, 326 (1992).  Thus, to the extent that the Plaintiff's claim for misappropriation of trade secrets survives, so too does his claim for unfair and deceptive trade practices against ENO.


# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motions to Dismiss the Amended Complaint [Docs. 24, 26, 31] are **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Defendants' Motions are **GRANTED** to the extent that (1) the Plaintiff's Fifth Claim for Relief for fraudulent inducement is **DISMISSED WITH PREJUDICE** as to all Defendants and (2) the Plaintiff's Sixth Claim for Relief for unfair and deceptive trade practices is **DISMISSED WITH PREJUDICE** as to Defendants Peter Pinholster and Paul Pinholster.  In all other respects, the Defendants' Motions to Dismiss are **DENIED**.

**IT IS SO ORDERED.**

Signed: August 13, 2018

Martin Reidinger
United States District Judge

23